**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TILEBAR, formally known as SOHO STUDIO CORP, LLC,<br><br>        Plaintiff,<br><br>     v.<br><br>GLAZZIO TILES, formally known as DEUTSCH IMPORTS, LLC; GABRIELLE VONRUMPF; and JESSICA ARMSTRONG,<br><br>        Defendant. | Case No. 1:22-cv-03823-PKC-RML<br><br><u>Assigned to</u>:<br>Judge Pamela K. Chen<br>Magistrate Judge Robert M. Levy |

**INITIAL MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S**
**APPLICATION FOR A TEMPORARY RESTRAINING ORDER**
**<u>AND MOTION FOR A PRELIMINARY INJUNCTION</u>**

David N. Kleinmann
Joel H. Rosner
TARTER KRINSKY & DROGIN LLP
1350 Broadway – 11th Floor
New York, New York 10018
(212) 216-8000
dkleinmann@tarterkrinsky.com
jrosner@tarterkrinsky.com

*Attorneys for Plaintiff*
*Glazzio Tiles, formally known as*
*Deutsch Imports, LLC*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................... 1

FACTS PERTINENT TO PLAINTIFF'S REQUESTED RELIEF............................... 3

ARGUMENT ............................................................................................... 4

THE COURT SHOULD DENY PLAINTIFF'S ORDER TO SHOW CAUSE FOR A
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ...................... 4

  A.  The Legal Standard to Obtain a Temporary  Restraining Order and a
  Preliminary Injunction.......................................................................... 4

    1.  Plaintiff Must Meet a Heightened Standard Because It Seeks a
    Mandatory Injunction ....................................................................... 5

  B.  Plaintiff's Proposed Order to Show Cause for Injunctive Relief  Should be
  Denied Under Either the Heightened or Regular Standards ........................ 6

    1.  Plaintiff Lacks Standing to Pursue Claims in a New York Court................... 6

    2.  Even if Plaintiff had Standing to Bring Suit in a New York Court,
    Plaintiff Brought this Action in Breach of a Venue Selection Provision ................ 8

    3.  No Showing of Irreparable Harm has Been Made ..................................... 10

    4.  No Showing of a Likelihood of Success on the Merits has Been Shown ............. 14

    5.  Plaintiff has Made No Showing That the Balance of Hardships Favors It ............. 16

CONCLUSION................................................................................................ 16

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*327 Realty, LLC v. Nextel of New York, Inc.*,
    150 A.D.3d 581, 55 N.Y.S.3d 202 (App. Div. 2017) ................................................9

*Allstate Ins. Co. v. Elzanaty*,
    929 F. Supp. 2d 199 (E.D.N.Y. 2013) ............................................................10, 14

*Buchanan Capital Markets, LLC v. DeLucca*,
    144 A.D.3d 508, 41 N.Y.S.3d 229 (App. Div. 2016) ............................................16

*Caring People Mgmt. Servs., LLC v. Assistcare Home Health Servs. LLC*,
    162 A.D.3d 509, 74 N.Y.S.3d 861 (App. Div. 2018) ..............................................8

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*,
    598 F.3d 30 (2d Cir. 2010)......................................................................................4

*Crouse-Hinds Co. v. InterNorth, Inc.*,
    634 F.2d 690 (2d Cir. 1980)....................................................................................9

*Faiveley Transport Malmo AB v. Wabtec Corp.*,
    559 F.3d 110 (2d Cir. 2009)................................................................12, 13, 15

*Int'l Home Care Servs. of New York, LLC v. People's United Bank, Nat'l Ass'n*,
    No. 20-CV-3358, 2020 WL 5752187 (E.D.N.Y. Sept. 24, 2020) ..........................10

*JTH Tax LLC v. Agnant*,
    No. 22-CV-2385, 2022 WL 1556656 (E.D.N.Y. May 17, 2022) ............................5, 6, 10, 11

*Moore v. Consol. Edison Co. of N.Y.*,
    409 F.3d 506 (2d Cir. 2005)..................................................................................10

*MPEG LA, L.L.C. v. Toshiba Am. Info. Sys., Inc.*,
    No. 15-CV-3997, 2015 WL 6685523 (S.D.N.Y. Oct. 29, 2015) ............................6

*Nat'l Football League Mgmt. Council v. Nat'l Football League Players Assn.*,
    No. 17-cv-06761, 2017 WL 4685113 (S.D.N.Y. Oct. 17, 2017)............................4

*R.R. Donnelley & Sons Co. v. Marino*,
    505 F. Supp. 3d 194 (W.D.N.Y. 2020) ................................................................15

*Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Oregon, Inc.*,
    156 F. Supp. 3d 348 (E.D.N.Y. 2016) ..................................................................6

**Statutes**

N.Y. Limited Liability Company Law § 802 ..................................................................................7

N.Y. Limited Liability Company Law § 808 ..................................................................................7

**Other Authorities**

Federal Rules of Civil Procedure, Rule 17 ...............................................................................6, 7

Federal Rules of Civil Procedure, Rule 19 ..................................................................................9

Defendant Glazzio Tiles, formally known as Deutsch Imports, LLC ("Glazzio") submits this initial memorandum of law in opposition to Plaintiff's proposed Order to Show Cause for a preliminary injunction and application for a temporary restraining order. As Glazzio has only had a short time to review Plaintiff's moving papers and prepare opposition, this memorandum does not fully address all the reasons why the Court should deny Plaintiff's requested Order to Show Cause and the injunctive relief it seeks. Glazzio respectfully requests, should the Court grant any portion of the request for a temporary restraining order, that the Court permit it to submit supplemental opposition more fully discussing the reasons why Plaintiff's request for a preliminary injunction should be denied.

## PRELIMINARY STATEMENT

Plaintiff's application for a temporary restraining order and a preliminary injunction should be denied because Plaintiff cannot demonstrate irreparable harm or a likelihood of success on the merits. Plaintiff made no effort to contact Glazzio to demand the return of its purportedly confidential information or trade secrets before bringing this suit. Within hours of the undersigned being retained as counsel for Glazzio in this matter, Glazzio's counsel told Plaintiff's counsel that Glazzio was willing to negotiate and consent to a search for any confidential information or trade secrets that Plaintiff contended that Glazzio possessed. Glazzio proposed a forensic search utilizing hash values (a unique identifier for each electronic document). Glazzio's counsel also indicated that Glazzio would produce a copy to Plaintiff of any such information that it possessed that originated from Plaintiff and then, with Plaintiff's consent, delete the information so it would not be in Glazzio's possession and control. Glazzio's counsel also told Plaintiff's counsel we would instruct Gabrielle vonRumpf ("vonRumpf") and Jessica Armstrong ("Armstrong") to return any confidential information or trade secrets of Plaintiff that was still in their possession. Yet

Plaintiff declined this offer of a voluntary return of the information at issue, preferring to litigate this motion—in which it claims to seek the return of the same confidential information and trade secrets.

The only reasonable conclusion is that Plaintiff seeks to use the motion for a tactical purpose, such as unlawfully preventing its former employees from working for a competitor or trying to prevent that competitor from developing its existing competing business.  This is not conjecture.  This relief is literally requested by Plaintiff in its preliminary statement on page 2 of its moving brief ("(4) enjoin Glazzio from continuing to employ vonRumpf and Armstrong until such time as all TileBar information has been secured and removed from Defendants' possession; and (5) preclude Glazzio from selling tile and other building products to commercial customers so long as it is in possession of TileBar information.")  (Moving Mem., Dkt. 10, at 2.)  The Court should not countenance this misuse of this motion.  Plaintiff cannot fail to ask for its information to be returned, decline a return on consent, and attempt to manufacture irreparable harm for an injunction by refusing to consent to the repairing of the alleged harm.

There also is nothing in this record to reflect any imminent irreparable harm.  While Plaintiff seeks a temporary restraining order and preliminary injunction preventing Glazzio from dealing with both its prospective and actual clients, there are no allegations that Plaintiff has lost any clients to Glazzio.  Plaintiff appears instead to be relying on a presumption of irreparable harm arising from the misappropriation of trade secrets, but the Second Circuit has explicitly held there is no presumption of harm in circumstances such as those alleged by Plaintiff.

It also appears that Plaintiff lacks standing to bring this claim, as no entity bearing its name is authorized to do business in New York, although Plaintiff asserts it is headquartered here.  Under New York's Limited Liability Company Law, an unauthorized LLC doing business in New York

is barred from maintaining claims in New York's state and federal courts. Even if Plaintiff were authorized to bring claims in New York, it cannot bring its claim in this Court. Rather, Plaintiff has alleged it has enforceable confidentiality agreements with both vonRumpf and Armstrong. Pursuant to that agreement Plaintiff is required to bring its claims in the Supreme Court, Nassau County, under a venue selection provision contained therein.

Last, the relief requested by Plaintiff falls into two categories. The first, the return and non-use of its information, Glazzio has already agreed to do. The second, the mandatory termination of the employment of vonRumpf and Armstrong, and the mandatory injunction prohibiting the sale to Plaintiff's non-exclusive clients (in which they have no goodwill) is not permitted by law. These are mandatory injunctions because Plaintiff seeks on this motion the ultimate relief it seeks in this case. These mandatory injunctions, including preventing sales to unnamed and unknown non-exclusive clients and mere potential clients and preventing Glazzio from continuing sales to commercial clients, Plaintiff seeks to enjoin without bond. Plaintiff has not satisfied the heightened legal standard required to obtain mandatory injunctions, nor would an unbonded mandatory injunction, prior to the request for the return of information and having rejected a voluntary return of information, be anything short of extraordinary.

Accordingly, Plaintiff's application for a temporary restraining order and a preliminary injunction be denied.

## **FACTS PERTINENT TO PLAINTIFF'S REQUESTED RELIEF**

Prior to the filing of this action and the motion requesting a temporary restraining order, Plaintiff did not contact Glazzio and request the return of information it contends Glazzio possesses. On June 30, 2022, within a few hours after the undersigned counsel was retained by Glazzio to act in this matter, Glazzio's counsel contacted Plaintiff's counsel to discuss the relief

Plaintiff seeks to obtain in its proposed Order to Show Cause.   (Declaration of David N. Kleinmann, dated July 5, 2022 ("Kleinmann Decl."), ¶ 3.)  Glazzio's counsel advised it would willingly conduct a search for any confidential information and trade secrets on its systems, using a forensic method involving hash values (a unique identifier for each document), and return any materials that were found and willingly delete same (with Plaintiff's consent) from its possession and control, which would obviate the need for the core of this motion.  (*Id.* ¶ 4.)  Glazzio would also direct the other defendants, vonRumpf and Armstrong to similarly comply.  (*Id.*)  Glazzio is willing to voluntarily return any information it possesses which originated from Plaintiff and consent not to use any confidential information and trade secrets of Plaintiff which were communicated to Glazzio.  (*Id.* ¶ 5.)

Plaintiff did not accept the offer, which would have obviated the need for this motion to be heard by the Court.  (*Id.* ¶ 6.)

## ARGUMENT

### THE COURT SHOULD DENY PLAINTIFF'S ORDER TO SHOW CAUSE FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

**A.      The Legal Standard to Obtain a Temporary Restraining Order and a Preliminary Injunction**

The standard to obtain a preliminary injunction is well established:

for the last five decades, this circuit has required a party seeking a preliminary injunction to show "'(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.'"

*Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (*quoting Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.*, 596 F.2d 70, 72 (2d Cir.1979))*.*

Likewise, "the standard for an entry of a TRO is the same as for a preliminary injunction."  *Nat'l*

*Football League Mgmt. Council v. Nat'l Football League Players Assn.*, No. 17-cv-06761, 2017 WL 4685113, at *1 (S.D.N.Y. Oct. 17, 2017) (*citing CF 135 Flat LLC v. Triadou SPY N.A.*, No. 15-cv-5345, 2016 WL 2349111, at *1 (S.D.N.Y. May 3, 2016)).

    1.  <u>Plaintiff Must Meet a Heightened Standard Because It Seeks a Mandatory Injunction</u>

"'Courts refer to preliminary injunctions as [either] prohibitory or mandatory.'" *JTH Tax LLC v. Agnant*, No. 22-CV-2385, 2022 WL 1556656, at *8 (E.D.N.Y. May 17, 2022) (quoting *N. Am. Soccer League, LLC v. U.S. Soccer Fed'n, Inc.*, 883 F.3d 32, 36 (2d Cir. 2018)). A "'[p]rohibitory injunction[ ] maintain[s] the status quo pending resolution of the case[,] [a] mandatory injunction[ ] alter[s] it.'" *Id.* (quoting *N. Am. Soccer League*, at 883 F.3d at 36-37). A party moving for a mandatory injunction, or an injunction that 'will provide the movant with substantially all the relief sought' . . . must satisfy a heightened legal standard and both: '(1) make a strong showing of irreparable harm, and (2) demonstrate a clear or substantial likelihood of success on the merits.'" *Id.* (quoting *Yang v. Kosinski*, 960 F.3d 119, 127–28 (2d Cir. 2020)).

Plaintiff has proposed in its Order to Show Cause that the Court order Glazzio to fire Armstrong and vonRumpf and order Glazzio to stop providing services to commercial customers, including unnamed clients of Plaintiff (with which it does not even allege it has exclusive relationships) and mere prospective potential clients which are, by definition, companies which are not clients of Plaintiff.[1] Rather than seeking to enforce the status quo ante, these demands ask the Court to alter the status quo by ordering affirmative conduct by Glazzio. Moreover, a preliminary injunction will be deemed mandatory where it "requests relief identical to the relief

---

[1] As Plaintiff has identified many of its customers in the Complaint, refuting any assertion that their identity is confidential or secret, and does not allege its relationship with them is exclusive, Plaintiff has no basis for claiming a protectible interest in such relationships. *See*, *e.g.*, Complaint ¶ 17.

sought in its Complaint's demands for injunctive relief." *Id.* (quotation omitted).  Here, Plaintiff seeks the same relief in its Complaint as on this motion with respect to terminating Armstrong's and vonRumpf's employment with Glazzio and halting Glazzio's commercial sales.  (Complaint, at 43.)

As Plaintiff seeks a mandatory preliminary injunction, the Court should apply a heightened legal standard in evaluating the request.

**B.     Plaintiff's Proposed Order to Show Cause for Injunctive Relief**
         **Should be Denied Under Either the Heightened or Regular Standards**

   1.   Plaintiff Lacks Standing to Pursue Claims in a New York Court

Rule 17 of the Federal Rules of Civil Procedure governs litigants' capacity to sue in federal court.  Plaintiff alleges in the Complaint is that it is "a Delaware limited liability company with its principal place of business" in New York.  (Kleinmann Decl., Ex. A ("Complaint"), ¶ 6.)  Under Rule 17(b)(3), the Court must look to the "state where the court is located," i.e., New York, to determine whether an LLC has the capacity to sue.  Consequently, New York law governs whether Plaintiff has the capacity to sue.  *See*, *e.g.*, *Sands Harbor Marina Corp. v. Wells Fargo Ins. Servs. of Oregon, Inc.*, 156 F. Supp. 3d 348, 358 (E.D.N.Y. 2016) ("Rule 17(b)(3) requires a New York court to apply New York law to decide whether a limited liability company has capacity to sue); *MPEG LA, L.L.C. v. Toshiba Am. Info. Sys., Inc.*, No. 15-CV-3997, 2015 WL 6685523, at *6 (S.D.N.Y. Oct. 29, 2015) (Under Rule 17(b)(3), "a limited liability company's capacity to sue or to be sued is governed by the law of the forum state—here, New York").

Plaintiff, which alleges it is headquartered in New York, is doing business in New York. But no entity bearing Plaintiff's name is authorized to do business in New York.  (Kleinmann Decl.

¶ 7.)  Accordingly, under New York law, Plaintiff should not have commenced this lawsuit and does not have standing to maintain it.

Section 808(a) of New York's Limited Liability Company Law provides that a foreign limited liability company that is doing business in this state without being authorized to do so, "may not maintain any action, suit or special proceeding in any court of this state unless and until such limited liability company shall have received a certificate of authority in this state."  Limited Liability Company Law § 802 requires a foreign LLC seeking to do business in New York to first apply for the authority to do so and then to file a certificate demonstrating it had published certain information about itself, set forth in § 802(b)), within 120 days of filing its application for authority.  "Proof of the publication required by this paragraph, consisting of the certificate of publication of the foreign limited liability company with the affidavits of publication of such newspapers annexed thereto, must be filed with the department of state."  *Id.*  § 802(b).  If the foreign LLC fails to file proof of publication within 120 days after filing its application for authority, then it does not receive a certificate of authority, and "the authority of such foreign limited liability company to carry on, conduct or transact any business in this state shall be suspended, effective as of the expiration of such one hundred twenty day period."  *Id.*

A search conducted by the New York Department of State shows that no entity bearing Plaintiff's name "Soho Studio Corp, LLC" has filed an application for authority to do business in New York or provided a certificate of publication concerning its LLC status.  (Kleinmann Decl. ¶ 7.)  Therefore, Plaintiff is not authorized to do business in New York as required by Limited Liability Company Law § 802.

Consequently, under Limited Liability Company Law § 808(a) and Rule 17 of the Federal Rules of Civil Procedure, this case must be dismissed (or, at a minimum, stayed) unless Plaintiff

can demonstrate that it is properly authorized to do business in New York. *Caring People Mgmt. Servs., LLC v. Assistcare Home Health Servs. LLC*, 162 A.D.3d 509, 509, 74 N.Y.S.3d 861 (App. Div. 2018) (foreign LLC that failed to obtain authority to do business in New York was barred from bringing action in New York courts).

2.  Even if Plaintiff had Standing to Bring Suit in a New York Court,
    Plaintiff Brought this Action in Breach of a Venue Selection Provision

Plaintiff's claims rely heavily on purported breaches by both vonRumpf and Armstrong of a confidentiality agreement contained in Addendum A to an employee handbook, which Plaintiff contends is a binding agreement.[2] *See*, *e.g.*, Complaint ¶¶ 198, 200-02 ("vonRumpf and Armstrong agreed to abide by the terms of Addendum A to the TileBar employee handbook as a condition of their employment with TileBar . . . vonRumpf violated sections 1(c)(i)(B) and 1(c)(i)(C) of Addendum A . . . Armstrong violated sections 1(c)(i)(B) and 1(c)(i)(C) of Addendum A . . . vonRumpf violated Section 3 of Addendum A . . ."). But section 7 of the confidentiality agreement contains a venue selection provision that requires any claim to enforce the agreement to be brought only in a "state or federal court **located** in the state of New York, County of Nassau." (emphasis supplied) (Declaration of Kerri DiGirolamo, dated June 29, 2022 (Dkt. 16) ("DiGirolamo Decl."), Ex. F § 7.) This Court is not located in the County of Nassau, nor is any federal court in the Eastern District of New York.[3] Thus, Plaintiff, who drafted the confidentiality agreement and

---

[2] Plaintiff has not provided signed copies of the agreements. We presume their validity solely for purposes of this opposition.

[3] Any argument that the venue selection provision is ambiguous and should be read to apply to federal courts with jurisdiction over the County of Nassau should be rejected. The word chosen in the contract was "located." Addendum A was drafted by Plaintiff and imposed unilaterally on all its employees as a condition of their employment. (DiGirolamo Decl. ¶¶ 7, 11 ("As a condition of employment with TileBar, all newly hired employees agree to abide by TileBar's employment policies, which can be found in TileBar's Employee Handbook and Addenda to the Handbook . . . As a condition of employment, employees agree to abide by TileBar's Confidentiality and

disseminated it to all of its new employees, including these Oklahoma residents, can only bring its claim in Nassau County Supreme Court.  (DiGirolamo Decl. ¶ 7.)

Since Defendants vonRumpf and Armstrong must be dismissed from this action, in favor of an action in the Supreme Court, Nassau County, this action it should not continue against Glazzio in their absence.  It is indisputable that vonRumpf and Armstrong are indispensable parties for two reasons.  First, Plaintiff has placed vonRumpf and Armstrong at the center of this matter and alleges claims against Glazzio only in connection with conduct by vonRumpf and Armstrong. *See*, *e.g.*, Complaint ¶ 54 ("several employees and one of TileBar's suppliers informed TileBar of vonRumpf and Armstrong's disloyal conduct on behalf of Glazzio while employed by TileBar, including working on a business plan for Glazzio while several months before their resignation from TileBar, soliciting TileBar's employees, and even soliciting a supplier to take their business from TileBar to Glazzio.)

Second, Plaintiff seeks an order in this action requiring Glazzio to terminate Armstrong's and vonRumpf's employment.  Under Rule 19(a)(1) of the Federal Rules of Civil Procedure, Armstrong and vonRumpf are therefore indispensable parties, as they would be affected by a ruling in this action requiring the termination of their employment.  *See Crouse-Hinds Co. v. InterNorth, Inc.*, 634 F.2d 690, 700-01 (2d Cir. 1980) (citing *Lomayaktewa v. Hathaway*, 520 F.2d 1324, 1325 (9th Cir. 1975), *cert denied*, 425 U.S. 903 (1976) ("No procedural principle is more deeply imbedded in the common law than that, in an action to set aside a lease or a contract, all parties who may be affected by the determination of the action are indispensable.")).

---

Security Agreement . . . appended to the Handbook as Addendum A.))  Under New York law—which, per the venue provision, governs the agreement—ambiguities in a contract are construed against the drafter. *327 Realty, LLC v. Nextel of New York, Inc.*, 150 A.D.3d 581, 582, 55 N.Y.S.3d 202 (App. Div. 2017).  Thus, the confidentiality agreement should be strictly enforced against Plaintiff, requiring it to bring its claim in a court located in Nassau County.

3.   No Showing of Irreparable Harm has Been Made

As this Court is aware from its recent decision in *JTH Tax LLC v. Agnant*, No. 22-CV-2385, 2022 WL 1556656, *9 (E.D.N.Y. May 17, 2022), "[t]he showing of irreparable harm is perhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered." *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 221 (E.D.N.Y. 2013) (alteration omitted) (quoting *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002)). "[T]o show irreparable harm, the moving party must establish that there is a continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Int'l Home Care Servs. of New York, LLC v. People's United Bank, Nat'l Ass'n*, No. 20-CV-3358, 2020 WL 5752187, at *4 (E.D.N.Y. Sept. 24, 2020).   "Where there is an adequate remedy at law, such as an award of money damages, injunctions are unavailable except in extraordinary circumstances." *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005). The moving party must also demonstrate that irreparable harm is "actual and imminent, not remote or speculative." *Allstate Ins. Co.*, 929 F. Supp. 2d at 221.

Plaintiff has not alleged it has suffered any harm other than the alleged misappropriation of its alleged confidential information and trade secrets.   Plaintiff does not allege it has lost any customers, prospective customers, suppliers, or other employees.   And Plaintiff has not identified any harm it would still be suffering after its allegedly confidential information and trade secrets are returned to it.   The only potential harm Plaintiff identifies concerns an alleged Fall 2022 campaign where Armstrong, vonRumpf, and Glazzio supposedly intend to use Plaintiff's confidential information and trade secrets to compete with Plaintiff.   (Complaint ¶ 43; Moving Mem., Dkt. 10, at 1.) Even if that claim were true, the alleged use will not take place for several

months.  That is no more than inadequate "remote and speculative" harm, not the "actual and imminent" harm that must be shown to obtain a preliminary injunction.  *See JTH*, 2022 WL 1556656, at *10 n.21 (finding the alleged harm was not imminent because the allegedly competing stores were largely not in operation).

Furthermore, Plaintiff has not shown that it is at any risk of irreparable harm from Glazzio's actions.  Plaintiff does not allege any basis for its contention that Glazzio has obtained Plaintiff's confidential information or trade secrets.  Plaintiff claims Glazzio received a PDF presentation captioned "Glazzio Commercial 2022" which allegedly contained confidential information and trade secrets.  (Declaration of Matthew Waas, dated June 29, 2022 (Dkt. 15) ("Waas Decl."), ¶ 50; Complaint ¶¶ 79-93.)  But even a cursory review of that presentation shows it is mostly a high-level discussion document that does not contain any information which reasonably could be considered as confidential or a trade secret.  Moreover, Plaintiff essentially has conceded there is nothing confidential or secret about this presentation by publicly filing the document as part of its proposed Order to Show Cause, disseminating it to the world.  (Declaration of Wes Johnson, dated June 29, 2022 (Dkt. 14) ("Johnson Decl."), Ex. 6.)

Plaintiff has also alleged that vonRumpf connected her TileBar computer to Glazzio's wireless network.  But Plaintiff's own analysis has established this connection occurred only a single time and lasted for less than a second.  (Johnson Decl. ¶¶ 12, 14.)  Yet Plaintiff fails to tell the Court that this wifi connection was so brief, such a fleeting connection is more likely to have been the product of accident rather than intentional conduct.  In any event, Plaintiff does not (and reasonably could not) contend any information was transferred during that moment.

The only other confidential information Plaintiff asserts Glazzio has obtained is the name of an allegedly confidential supplier, supposedly contacted by vonRumpf and a Glazzio

representative on June 28, 2022.  (Complaint ¶¶ 98, 142.)  But Plaintiff has eliminated any possible claim of confidentiality by publicly disclosing the supplier's name in its moving papers, again disseminating it to the world.  (Waas Decl. ¶¶ 61, 89.)  Regardless, Plaintiff does not allege such supplier exclusively supplies it, and it alleges no other basis on which the identity of this supplier, which has a website and advertises to the general public, can be considered to be confidential.[4]

Even if Glazzio had obtained Plaintiff's confidential information and trade secrets for use in creating a Fall 2022 campaign, that, alone, would not be sufficient to demonstrate Plaintiff was at risk of irreparable harm.  While Plaintiff claims that it is entitled to a presumption of irreparable harm and that "[i]rreparable harm is presumed where a trade secret has been misappropriated," this is no longer the law in the Second Circuit pursuant to the well-known decision in *Faiveley Transport Malmo AB v. Wabtec Corp.*, 559 F.3d 110 (2d Cir. 2009).[5]  *See* Moving Mem. at 13 (citing *Lumex, Inc. v. Highsmith*, 919 F. Supp. 624, 628 (E.D.N.Y. 1996)).[6]

Rather, "[w]here a misappropriator seeks only to use those secrets—without further dissemination or irreparable impairment of value—in pursuit of profit, no . . . presumption [of irreparable harm] is warranted because an award of damages will often provide a complete remedy

---

[4] https://www.milestonetiles.com/en/

[5]    See    also    Epstein    Becker    &    Green    News    Update https://www.tradesecretsandemployeemobility.com/2009/03/articles/trade-secrets-and-confidential-information/second-circuit-vacates-injunction-and-refines-analysis-of-whether-irreparable-harm-may-be-found-when-trade-secrets-have-been-misappropriated/ (On appeal, the Second Circuit vacated the injunction because Faiveley had not demonstrated that it faced irreparable injury. Although the Second Circuit agreed that Wabtec had misappropriated trade secrets, it held that misappropriation alone does not give rise to a presumption of irreparable harm… The Court went on to note in dicta that even where irreparable injury has been shown, only a narrowly drawn preliminary injunction that protects the trade secret from further disclosure or use may be appropriate, and admonished courts in all cases to strive to avoid unnecessary burdens on lawful commercial activity.)

[6] When contrary law rendering a previous decision outdated is known to a party, the contrary law must be provided to the Court.

for such an injury." *Faiveley,* 559 F.3d at 118-19 (finding no presumption of irreparable harm because of a misappropriation of trade secrets for the alleged purpose of obtaining a competitive advantage). "Indeed . . . the misappropriator will often have the same incentive as the originator to maintain the confidentiality of the secret in order to profit from the proprietary knowledge." *Id.* at 119. "[W]here there is no danger that a misappropriator will disseminate proprietary information, the only possible injury that [the] plaintiff may suffer is loss of sales to a competing product ... [which] should be fully compensable by money damages." *Id.* (quotation omitted). Even in "cases where the presumption applies (and has not been rebutted) or where irreparable injury has been demonstrated," only a "'narrowly drawn' preliminary injunction that protects the trade secret from further disclosure or use may be appropriate," and in all cases, "the relief should be 'narrowly tailored to fit specific legal violations' and to avoid 'unnecessary burdens on lawful commercial activity.'" *Id.   Faiveley*, therefore, requires the denial of Plaintiff's request for a mandatory injunction ordering Glazzio to fire vonRumpf and Armstrong and precluding Glazzio from selling tile and other building products to commercial customers.

Finally, Plaintiff's actions in this litigation have vitiated any claim that it will be irreparably harmed unless Defendants are enjoined from further conduct. Plaintiff does not assert it made any demand that Glazzio return its confidential information and trade secrets before it brought this suit. Within hours of learning of this lawsuit, Glazzio offered to provide Plaintiff essentially all the relief necessary to address its claimed irreparable harm, i.e., Glazzio would not use Plaintiff's confidential information and trade secrets, would return any such information on its systems, would direct Armstrong and vonRumpf to return any confidential information and trade secrets they have, and would memorialize this agreement. This is the most that *Faiveley* requires. But Plaintiff refused this offer and insists it will continue to litigate this motion. The only possible

reason for Plaintiff's refusal is that it intends to make tactical use of the motion to obtain relief it could not obtain if its confidential information and trade secrets have been returned and it had a promise that information would not be used, i.e., Plaintiff seeks to force Glazzio to terminate Armstrong and vonRumpf and prevent Glazzio from pursuing its commercial sales business for fear of competition with Plaintiff's business.  (Moving Mem., Dkt. 10, at 2.)  If Plaintiff genuinely were at risk of irreparable harm, it would have seized the opportunity to obtain all its information back without the need for litigation.[7]

A showing of irreparable harm is "the single most important prerequisite for the issuance of a preliminary injunction" and must be shown "before the other requirements for an injunction will be considered."  *Allstate Ins. Co.*, 929 F. Supp. at 221.  As Plaintiff has not demonstrated it is at risk of any actual or imminent irreparable harm, its requested injunctive relief should be denied.

4.  No Showing of a Likelihood of Success on the Merits has Been Shown

Plaintiff has also failed to allege facts that would show a likelihood of success on its claims against Glazzio.  Plaintiff has not alleged any facts or identified any evidence that show Glazzio did anything more than solicit Plaintiff's employees and view a high-level presentation that, as discussed above, does not contain confidential information or trade secrets.  Plaintiff also does not allege Glazzio has used any of Plaintiff's confidential information and trade secrets (and Plaintiff has refused Glazzio's offer to return any confidential information and trade secrets it may inadvertently possess).  Rather, Plaintiff simply speculates that Glazzio may have been involved with vonRumpf's and Armstrong's actions.

---

[7] Plaintiff's delay in pursuing this litigation highlights its lack of any irreparable harm. Plaintiff alleges it learned on May 25, 2022, one day after vonRumpf resigned, that weeks earlier, she had solicited one of Plaintiff's allegedly confidential suppliers to leave Plaintiff and begin working with Glazzio.  (Complaint ¶ 98; Waas Decl. ¶ 61.)  Yet Plaintiff waited more than a month before bringing this lawsuit, and it does not even attempt to justify its delay in acting.

Further, Plaintiff has failed to demonstrate that its allegedly misappropriated information actually was confidential or a trade secret. "To succeed on a claim for the misappropriation of trade secrets under New York law, a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *Faiveley*, 559 F.3d at 117 (quotation omitted). "A trade secret is any formula, pattern, device or compilation of information which is used in one's business, and which gives the owner an opportunity to obtain an advantage over competitors who do not know or use it." *Id.* (quotation omitted) (identifying factors courts consider in determining whether information is a trade secret). Plaintiff's conclusory assertions that it has protectible trade secrets and confidential information are not sufficient to establish a likelihood of success because they cannot plead nor demonstrate that Glazzio possesses any of Plaintiff's trade secrets. Nor can alleged possession by vonRumpf or Armstrong be considered possession by Glazzio. *See R.R. Donnelley & Sons Co. v. Marino,* 505 F. Supp. 3d 194, 206 (W.D.N.Y. 2020) (dismissing claims against the new employer of a former employee of plaintiff because, although the "complaint contains a variety of allegations against [the former employees] in connection with their alleged efforts to steal Plaintiffs' alleged confidential trade secret information and use that information in their efforts to generate business on behalf of the [new employer]", "the complaint is devoid of factual allegations as to [the new employer's] involvement in these activities.") As the *R.R. Donnelly* court demonstrates, conflating a former employee's alleged wrongdoing with that of a new employer absent any factual allegation linking the new employer to the alleged wrongdoing is insufficient to maintain a trade secret misappropriation claim against the new employer. *Id.* Consequently, Plaintiff's conclusory assertions that Glazzio

has engaged in misconduct are inadequate to demonstrate it has a likelihood of success on its claims.

5.   <u>Plaintiff has Made No Showing That the Balance of Hardships Favors It</u>

Finally, Plaintiff has made no showing that the balance of hardships is in their favor.  It merely makes the conclusory assertion that, "[t]he balance of equities favors a temporary restraining order and preliminary injunction because Defendants have intentionally and fragrantly [sic] disregarded their legal and contractual obligations, and will continue to do so in the absence of an injunction."  Plaintiff fails to explain how the obvious hardship it seeks to impose by a mandatory injunction, including the forced terminations of two employees, and the prohibition on selling to unnamed, non-exclusive clients and unnamed mere potential clients, is somehow less than the harm Plaintiff will suffer if such clients are lost.  Indeed, if clients are lost, that is entirely compensable through monetary damage, and therefore does not show hardship to Plaintiff sufficient to make the required showing.  *Buchanan Capital Markets, LLC v. DeLucca*, 144 A.D.3d 508, 509, 41 N.Y.S.3d 229 (App. Div. 2016) (the loss of customers is "clearly compensable with monetary damages").

<b><u>CONCLUSION</u></b>

For all the foregoing reasons, Plaintiff's application for a temporary restraining order and

preliminary injunction should be denied, together with such other and further relief as the Court

may deem proper.

Dated:   New York, New York
         July 5, 2022

                        **TARTER KRINSKY & DROGIN LLP**


                        By:   */s/ David N. Kleinmann*
                              David N. Kleinmann
                              Joel H. Rosner
                        1350 Broadway, 11th Floor
                        New York, New York 10018
                        Tel: (212) 216-8000
                        Fax: (212) 216-8001
                        dkleinmann@tarterkrinsky.com
                        jrosner@tarterkrinsky.com

                        *Attorneys for Plaintiff Glazzio Tiles, formally*
                        *known as Deutsch Imports, LLC*

17