**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

2377730_1

| | |
|---|---|
| TILEBAR, formally known as SOHO STUDIO CORP, LLC, <br><br>        Plaintiff, <br><br> v. <br><br> GLAZZIO TILES, formally known as DEUTSCH IMPORTS, LLC; GABRIELLE VONRUMPF; and JESSICA ARMSTRONG, <br><br>        Defendants. | Case No.:  1:22-cv-03823(PKC)(RML) |

---

**DEFENDANT JESSICA ARMSTRONG'S BRIEF IN OPPOSITION TO PLAINTIFF'S ORDER TO SHOW CAUSE SEEKING TEMPORARY RESTRAINTS, FILED ON JUNE 30, 2022**

---

**WEINER LAW GROUP LLP**
629 Parsippany Road, P.O. Box 438
Parsippany, New Jersey 07054-0438
Tel:  (973) 403-1100
jmcdaniel@weiner.law
*Counsel for Defendant, Jessica Armstrong*

Of Counsel and on the Brief:
  Jay R. McDaniel, Esq.

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ..................................................................................................... 1

STATEMENT OF FACTS ........................................................................................................... 2

LEGAL ARGUMENT ................................................................................................................. 5

     POINT I

     PLAINTIFF FAILS TO ESTABLISH A CHANCE OF SUCCESS ON THE
     MERITS................................................................................................................................... 6

     POINT II

     PLAINTIFF ALSO FAILS ON THE REMAINING FACTORS ON PRELIMINARY
     RELIEF OR EXPEDITED DISCOVERY ........................................................................... 12

CONCLUSION .......................................................................................................................... 16

## <u>TABLE OF AUTHORITIES</u>

**<u>Page</u>**

Cases

<u>106 N. Broadway, LLC v. Houlihan Lawrence</u>, 189 A.D.3d 733, 740, 137 N.Y.S.3d 148 (2d Dep't, 2020) ................................................................................................................. 12

<u>Am. Direct Mktg., Inc. v. Azad Int'l, Inc.</u>, 783 F. Supp. 84 (E.D.N.Y. 1992) ............................ 7

<u>Am. Fed. Grp., Ltd. v. Rothenberg</u>, 136 F.3d 897 (2d Cir. 1998) ................................................ 14

<u>American Broadcasting Companies v. Wolf</u>, 52 N.Y.2d 394, N.Y.S.2d 482, N.E.2d 363 (1981)15

<u>Andino v. Fischer</u>, 555 F. Supp. 2d 418 (S.D.N.Y. 2008)............................................................. 5

<u>Catskill Dev., LLC v. Park Place Entm't Corp.</u>, 547 F.3d 115 (2d Cir. 2008)............................ 12

<u>Cicel (Beijing) Sci. & Technolgy Co. v. Misonix, Inc.</u>, No. 17-CV-1642 (GRB), 2022 WL 188994, at *4 (E.D.N.Y. Jan. 20, 2022)................................................................................. 7

<u>County of Nassau, N.Y. v. Leavitt</u>, 524 F.3d 408 (2d Cir.2008)................................................... 6

<u>Delville v. Firmenich Inc.</u>, 920 F. Supp. 2d 446 (S.D.N.Y. 2013)    11

<u>Donohue v. Hochul</u>, 32 F.4th 200 (2d Cir. 2022) ........................................................................ 10

<u>Exec. Trim Constr., Inc. v. Gross</u>, 525 F. Supp. 3d 357 (N.D.N.Y. 2021)................................... 9

<u>ExpertConnect, LLC v. Parmar</u>, 773 F. App'x 651 (2d Cir. 2019) ............................................. 14

<u>Faiveley Transp. Malmo AB v. Wabtec Corp.</u>, 559 F.3d 110 (2d Cir. 2009) .............................. 6

<u>Ferreyra v. Decker</u>, 456 F. Supp. 3d 538 (S.D.N.Y. 2020) ........................................................ 13

<u>Galvin v. New York Racing Ass'n</u>, 70 F. Supp. 2d 163 (E.D.N.Y.), <u>aff'd sub nom.</u> <u>Galvin v. New York Racing Ass'n, Inc. (NYRA)</u>, 166 F.3d 1200 (2d Cir. 1998)..................................... 6

<u>Iacovacci v. Brevet Holdings, LLC</u>, 437 F. Supp. 3d 367 (S.D.N.Y. 2020). 7

<u>In re Alper Holdings USA, Inc.</u>, 398 B.R. 736 (S.D.N.Y. 2008) ................................................. 16

<u>Island Sports Physical Therapy v. Kane</u>, 84 A.D.3d 879, 923 N.Y.S.2d 158 (2011)................... 14

<u>Jeremias v. Toms Cap. LLC</u>, 204 A.D.3d 498, 499, 167 N.Y.S.3d 459 (1ˢᵗ Dep't, 2022)............. 11

<u>Litwin v. OceanFreight, Inc.</u>, 865 F. Supp. 2d 385 (S.D.N.Y. 2011).......................................... 16

<u>Maltby v. Harlow Meyer Savage, Inc.</u>, 166 Misc. 2d 481, 633 N.Y.S.2d 926 (Sup. Ct. 1995), aff'd, 223 A.D.2d 516, 637 N.Y.S.2d 110 (1996) ...................................................................... 15

<u>Mrs. United States Nat'l Pageant, Inc. v. Williams</u>, 353 F. Supp. 3d 213 (W.D.N.Y. 2019) ........ 9

<u>N. B. v. United States</u>, 552 F. Supp. 3d 387 (E.D.N.Y. 2021) ..................................................... 6

<u>New York v. Mountain Tobacco Co.</u>, 55 F. Supp. 3d 301 (E.D.N.Y. 2014)................................. 2

<u>Nomura Sec. Int'l, Inc. v. E*Trade Sec., Inc.</u>, 280 F. Supp. 2d 184 (S.D.N.Y. 2003).................. 9

<u>Primiani v. Vintage 185 Inc.</u>, No. 2:18-cv-2237(ADS)(AYS), 2019 WL 486087, at *4 (E.D.N.Y. Feb. 6, 2019).................................................................................................... 11

<u>Reuters Ltd. v. United Press Int'l, Inc.</u>, 903 F.2d 904 (2d Cir. 1990) .......................................... 6

<u>Saget v. Trump</u>, 375 F. Supp. 3d 280 (E.D.N.Y. 2019)................................................................ 13

<u>SCM v. Xerox</u>, 507 F.2d 358 (2d Cir.1974) ................................................................................. 7

<u>Sussman v. Crawford</u>, 488 F.3d 136 (2d Cir. 2007) .................................................................... 5

<u>Sutherland Glob. Servs., Inc. v. Stuewe</u>, 73 A.D.3d 1473, 902 N.Y.S.2d 272 (2010)................. 15

<u>Town & Country Linen Corp. v. Ingenious Designs LLC</u>, 556 F. Supp. 3d 222 (S.D.N.Y. 2021, reconsideration denied, No. 18-CV-5075 (LJL), 2021 WL 4892857 (S.D.N.Y. Oct. 19, 2021) ................................................................................................. 8

<u>TRB Acquisitions LLC v. Yedid</u>, No. 20-CV-0552 (JMF), 2021 WL 293122, at *2 (S.D.N.Y. Jan. 28, 2021)..................................................................................................................... 8

<u>Turret Labs USA, Inc. v. CargoSprint, LLC</u>, No. 19-cv-6793(EK) (RML), 2021 WL 535217, *6 (E.D.N.Y. Feb. 12, 2021)...................................................................................................... 10

Uni-Systems, LLC v. United States Tennis Assoc., Inc., 350 F. Supp. 3d 143 (E.D.N.Y. 2018) 10

Williams v. Rosenblatt Sec. Inc., 136 F. Supp. 3d 593 (S.D.N.Y. 2015)..................................... 13

Zurich Am. Life Ins. Co. v. Nagel, 538 F. Supp. 3d 396 (S.D.N.Y. 2021) ................................... 8

**Statutes**

Fed. R. Civ. P. 11(b) .................................................................................................................. 15

## PRELIMINARY STATEMENT

In addition to the arguments contained in Defendant Glazzio Tiles' Initial Memorandum of Law in Opposition to Plaintiff's Application for a Temporary Restraining Order and Motion for a Preliminary Injunction, (Dkt. 21), Plaintiff's application must specifically be denied as against Defendant Armstrong for two additional reasons. Defendant Armstrong otherwise adopts and incorporates by reference the arguments contained within Glazzio Tiles' brief.

First, the factual basis against Defendant Armstrong is conspicuously weak. As a general proposition, the complaint and the moving papers fail to identify any confidential information or trade secrets that were misappropriated or disclosed. All of the information described is generic and known to the public. There has been no showing that Defendant Armstrong wrongfully acquired, used, shared, or failed to return any confidential information belonging to TileBar. Thus, given that Plaintiff's unfair competition, breach of contract, and misappropriation of trade secrets claim are all premised upon this (incompletely alleged and factually non-existent) wrongdoing, Plaintiff has no chance of success on the merits. As to the last remaining claim—that Defendant Armstrong tortiously interfered with TileBar's Prospective Economic Advantage—there is, likewise, a total lack of any allegation or suspicion that Defendant Armstrong contacted any supplier or customer of TileBar or took any other wrongful action at all that interfered in TileBar's prospective advantage. Simply, Plaintiff has failed to even allege any of its claims against Defendant Armstrong, and therefore, Plaintiff cannot carry its burden of persuasion to warrant a preliminary injunction or temporary restraining order.

Second, TileBar fails to show why any injunction is necessary to prevent Defendant Armstrong specifically from causing any future irreparable harm. TileBar's single specific allegation of wrongdoing against Defendant Armstrong is that she participated in the creation of a

slide deck that contained purportedly confidential information.  Even if this presentation contained TileBar's confidential information, which, as discussed below, it does not, Plaintiff makes absolutely no effort to show that Defendant Armstrong is likely, or even able, to cause any actual, imminent irreparable prospective harm to TileBar.

Similarly, Plaintiff has likewise failed to show that the balance of equities tips in its favor, nor could it.  As Plaintiff's requested relief is extraordinary and oppressive—going so far as to ask this Court to force Defendant Armstrong to be terminated—compared to the alleged potential harm (i.e. lost market share to a competitor), the balance of equities tips decidedly in favor of the Defendants.  Finally, Plaintiff has not only failed to show that it is entitled to any expedited discovery, it has already declined offers to obtain the same information it now seeks.

<u>**STATEMENT OF FACTS**</u>

Plaintiff's allegations are a hodge-podge of repetitive and general claims of misappropriation of unidentified "trade secrets" and other business torts against either both Individual Defendants Armstrong and vonRumpf or against all Defendants, without indication of which Defendant allegedly committed which act.  Such "group pleading" is not only impermissible under the Federal Rules of Civil Procedure, <u>see, e.g.</u>, <u>New York v. Mountain Tobacco Co.</u>, 55 F. Supp. 3d 301, 315 (E.D.N.Y. 2014), but it also makes it nearly impossible for Defendant Armstrong to determine exactly what she is being accused of.[1]  Nevertheless, and based upon her best understanding of Plaintiff's claims, Defendant Armstrong has sworn to the following facts.

From early December 2020 to late May 2022, Defendant Armstrong was an employee of TileBar. (Armstrong Decl. ¶ 2). While she was hired for the role of "Inside Sales Representative,"

---

[1] Unfortunately, the same can be said for each of the sworn declarations submitted on Plaintiff's behalf, as they all contain nearly identical language as each other and Plaintiff's Complaint.

she never performed any duties pursuant to this role because she was immediately appointed the Marketing Project Coordinator for TileBar. (Id. at ¶¶ 2-3). By the time she left TileBar, she was TileBar's Director of Content. (Id. at ¶ 2).

After about a year at TileBar, Defendant Armstrong grew frustrated with the inaction of TileBar's human resources department upon reports of managerial misconduct. (Id. at ¶¶ 6-9). Defendant Armstrong had, along with others, reported to TileBar's human resources department that her supervisor, Erica Puccio, was frequently abusive to the staff and disparaged them in front of their superiors.  (Id. at ¶¶ 6-7).  When Ms. Puccio discovered Defendant Armstrong had cooperated with the human resources investigation into her, Ms. Puccio, increased her harassing behavior against Defendant Armstrong.  (Id.)  Defendant Armstrong then began exploring other opportunities where she would no longer report to Ms. Puccio, first within TileBar and then, ultimately, with other employers. (Id. at ¶¶ 8, 33, 56-63).

It was known among people in the industry that Co-Defendant Glazzio Tile was interested in growing their existing commercial segment and that it would soon be hiring for a person, or people, to help lead this effort.  (Id. at ¶¶ 22-24).  Co-Defendant vonRumpf, a personal friend of Defendant Armstrong prior to either of them being employed by TileBar, applied for the position leading Glazzio Tiles' new efforts. (Id. at ¶¶ 24-26).  Ms. vonRumpf made it known to people at TileBar that she applied for this position. (Id.). Ms. vonRumpf also suggested that Defendant Armstrong may be a good fit for an additional position at Glazzio Tiles, and suggested that Glazzio Tiles and Defendant Armstrong meet to discuss the possibility of this. (Id. at ¶¶ 26-27, 35).

Defendant Armstrong attended to this meeting and, understandably, expressed to Glazzio Tiles how her skills and experience would be valuable to the organization. (Id. at ¶¶ 35-38).  She

did not reveal any confidential information in this meeting. (Id.). Nor does Plaintiff allege she revealed any confidential information in this meeting.

Defendant Armstrong gave notice to individuals at TileBar that she was interviewing with Glazzio Tiles. (Id. at ¶ 39).

Glazzio Tiles requested that Ms. vonRumpf meet with their representatives again to discuss the opportunity, as well as requesting that both vonRumpf and Armstrong share some details of the strategies they would employ if selected for their respective roles. (Id. at ¶¶ 40-41). Again, Defendant Armstrong gave notice to individuals at TileBar that these conversations were ongoing and becoming more detailed. (Id. at ¶¶ 42-43).

Ms. vonRumpf solicited the help of Defendant Armstrong in preparing for this meeting. (Id. at ¶¶ 40, 45-48). Together, they produced a slide deck that gives a 30,000-foot view of what would be necessary to develop this business segment. (Id.). Plaintiff seems to allege that this presentation contains TileBar's confidential information and trade secrets, but it is not clear to Defendant Armstrong which portions of this presentation are "secret". (Id. at ¶ 50). The Declaration of Matthew Waas quotes heavily from this presentation, without ever stating that any of the strategies discussed are employed solely by TileBar and/or not already evident to anybody who does business with TileBar. Furthermore, the slide deck was publicly filed in full in this action (including the supposedly secret compensation and commission structure for sales managers and representatives). (See Decl. of Matthew Wass ¶¶ 50-65, Exh. G; Decl. of Wes Johnson, Exh. 6).[2] Defendant Armstrong states that the input she provided to this presentation was based entirely

---

[2] There was clearly an attempt to, at least partially, redact this information elsewhere in Plaintiff's filings. (See Decl. of Matthew Wass, Exh. G, at 5.) To the extent this was accidental, *errare humanum est*. Defendant Armstrong would not oppose Plaintiff's efforts to withdraw these filings. However, this information is hardly confidential. For example, glassdoor.com, a website that collects and analyzes user-submitted salaries for various job titles reports that Regional Sales Support Managers (a purportedly TileBar-exclusive title (Compl. ¶ 88)) have an annual median base pay of $70,140 with a median total pay package of $101,758. Glassdoor.com, "How much does a Regional Sales Support

upon her own skill and knowledge, gathered entirely independently of her work with TileBar. (Armstrong Decl. ¶¶ 46-47).

Defendant Armstrong provided notice of her resignation on Friday May 20, 2022. (Id. ¶ 61). Although at the time she provided notice of her resignation, Defendant Armstrong did not have a competing job offer, it appears that TileBar believed she had already been offered a position with Glazzio Tiles. (Compl. ¶ 104). On Monday, May 23, 2022, Defendant Armstrong was told her employment was terminated effective immediately and she was instructed to return her laptop and TileBar's confidential information. (Id. at ¶¶ 65, 67-69). Defendant Armstrong received the packing materials to return the laptop on June 1, 2022. (Id. at ¶ 73). On June 2, 2022, Defendant Armstrong mailed the laptop back to TileBar and returned all of the documents in her possession that were obtained from TileBar. (Id. at ¶¶ 73, 79).

## LEGAL ARGUMENT

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a <u>clear showing</u>, carries the burden of persuasion." <u>Sussman v. Crawford</u>, 488 F.3d 136, 139 (2d Cir. 2007) (emphasis in original) (citation omitted).

"It is well established that in this Circuit the standard for an entry of a TRO is the same as for a preliminary injunction." <u>Andino v. Fischer</u>, 555 F. Supp. 2d 418, 419 (S.D.N.Y. 2008) "A party seeking a preliminary injunction must demonstrate: (1) 'either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor,' and (2) 'irreparable harm in the absence of the injunction.'" <u>Faiveley Transp. Malmo AB v. Wabtec Corp.</u>, 559 F.3d

---

Manager make?," https://www.glassdoor.com/Salaries/regional-sales-support-manager-salary-SRCH_KO0,30.htm (last visited July 8, 2022). The proposed investment for Glazzio Tiles to hire an RSM is clearly within this range. (Decl. of Matthew Wass, Exh. G, at 7; Decl. of Wes Johnson, Exh. 6, at 7.)

110, 116 (2d Cir. 2009) (quoting County of Nassau, N.Y. v. Leavitt, 524 F.3d 408, 414 (2d Cir.2008)).

In this case, Plaintiff has failed to even allege claims against Defendant Armstrong showing that it is entitled to any relief at all.  The various declarations, all of which use virtually identical language, and none of which establish that Defendant Armstrong misappropriated any confidential information of TileBar, provide no further factual support for the entry of preliminary restraints against Defendant Armstrong.

"Where a plaintiff establishes less than probable success on the merits, he must come forward with a greater showing of irreparable damage." Galvin v. New York Racing Ass'n, 70 F. Supp. 2d 163, 189–90 (E.D.N.Y.), aff'd sub nom. Galvin v. New York Racing Ass'n, Inc. (NYRA), 166 F.3d 1200 (2d Cir. 1998).  In this case, Plaintiff's showing as to irreparable damage caused by the actions of Defendant Armstrong fares no better. At no point does Plaintiff even attempt to show that Defendant Armstrong is in possession of any confidential information, that Defendant Armstrong is planning to, or is likely to, share that information, or that Defendant Armstrong is capable of interfering with any of TileBar's relationships with its customers or suppliers. "The irreparable harm must be actual and imminent, not remote or speculative, and must establish that such harm is likely in the absence of an injunction." N. B. v. United States, 552 F. Supp. 3d 387, 397 (E.D.N.Y. 2021) (citing Reuters Ltd. v. United Press Int'l, Inc., 903 F.2d 904, 907 (2d Cir. 1990)).

Accordingly, Plaintiff's request for preliminary restraints must be denied.

## POINT I

## PLAINTIFF FAILS TO ESTABLISH A CHANCE OF SUCCESS ON THE MERITS

Plaintiff seeks injunctive relief against Ms. Armstrong on its six claims against her: violation of the Defend Trade Secrets Act ("DTSA"), common law misappropriation of trade secrets, unfair competition, breach of contract, breach of duty of loyalty, and tortious interference with prospective advantage.

"[T]he moving party has the burden of making the prima facie showing required and may be refused an injunction without a hearing if their papers fail to do so." Am. Direct Mktg., Inc. v. Azad Int'l, Inc., 783 F. Supp. 84, 91 (E.D.N.Y. 1992) (quoting SCM v. Xerox, 507 F.2d 358 (2d Cir.1974)).  In this case, Plaintiff has failed to show a prima facie case on any of its claims against Defendant Armstrong in at least one aspect each.

<u>Misappropriation of Trade Secrets (First and Second Causes of Action)</u>

"To succeed on a claim for the misappropriation of trade secrets under New York law, a party must demonstrate: (1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." Faiveley, 559 F.3d at 117; see also Cicel (Beijing) Sci. & Technolgy Co. v. Misonix, Inc., No. 17-CV-1642 (GRB), 2022 WL 188994, at *4 (E.D.N.Y. Jan. 20, 2022).  "The elements for a misappropriation claim under New York law are fundamentally the same [as under the DTSA]." Iacovacci v. Brevet Holdings, LLC, 437 F. Supp. 3d 367, 380 (S.D.N.Y. 2020). "[D]istrict courts often rely on cases discussing misappropriation under New York law to analyze DTSA claims." Id. (citation omitted).  Plaintiff fails to state a misappropriation of trade secret claim against Defendant Armstrong on both elements.

First, there is no plausible identification of any trade secret Defendant Armstrong is alleged to have misappropriated:

> Naturally, a DTSA plaintiff has no obligation to reveal its secrets in the complaint simply to prove that they exist. But that does not mean a party can get away with

nebulous descriptions at the highest level of generality. To the contrary, a complaint that only claims general categories of information and data as trade secrets does not state a claim under the DTSA because it does not adequately put the defendant on sufficient notice of the contours of the claim for misappropriation.

TRB Acquisitions LLC v. Yedid, No. 20-CV-0552 (JMF), 2021 WL 293122, at *2 (S.D.N.Y. Jan. 28, 2021) (citations and alterations omitted).  Here, there is no identification which trade secrets Defendant Armstrong allegedly misappropriated.  No mention of specific customer lists, no pricing information, no file names, descriptions of processes, etc. (Compare, e.g., Compl. ¶¶ 46-48 with 51, and 117-122 with 127).  The only "secrets" Defendant Armstrong is alleged to have misappropriated are those contained in the presentation slide deck prepared for Ms. vonRumpf's meeting with Glazzio Tiles—a presentation that Plaintiff has publicly made available by filing in its unredacted form via ECF.  *Twice.*  (Decl. of Matthew Wass, Exh. G; Decl. of Wes Johnson, Exh. 6).[3]

Second, Plaintiff has made no showing that Defendant Armstrong "misappropriated" any conceivable confidential information that Defendant Armstrong may have been in possession at any point during her employment at TileBar. "'Misappropriation' entails '(1) [ ] acquiring a trade secret by improper means, or (2) disclosing or using the trade secret without consent.'" Zurich Am. Life Ins. Co. v. Nagel, 538 F. Supp. 3d 396, 404–05 (S.D.N.Y. 2021) (citation omitted). Plaintiff does not claim in any of its papers that Defendant Armstrong took possession of any confidential material of TileBar that was outside the scope of her employment.  Likewise, except for the slide deck produced for Ms. vonRumpf's meeting with Glazzio Tiles, Plaintiff does not

---

[3] "As a general matter, 'where there is no genuine dispute that the party claiming misappropriation "disclose[d] [its] trade secret to others who are under no obligation to protect the confidentiality of the information . . . [its] property right is extinguished" and summary judgment is warranted.'" Town & Country Linen Corp. v. Ingenious Designs LLC, 556 F. Supp. 3d 222, 258 (S.D.N.Y. 2021, reconsideration denied, No. 18-CV-5075 (LJL), 2021 WL 4892857 (S.D.N.Y. Oct. 19, 2021) (citations omitted). Therefore, even if the slide deck did contain confidential information (and it does not), Plaintiff's request for preliminary restraints is now moot.

claim anywhere that Defendant Armstrong did, or plans to, use any trade secrets or reveal them to a third party.  Although Plaintiff has failed to show that Defendant Armstrong is (or ever was) in possession of confidential information or trade secrets, the risk of disclosure being hypothetically possible, does not equate with it being actual and imminent or entitling Plaintiff to injunctive relief. Mrs. United States Nat'l Pageant, Inc. v. Williams, 353 F. Supp. 3d 213, 222 (W.D.N.Y. 2019) (holding that plaintiff failed to establish that it was irreparably harmed by its former licensee's retention of physical and electronic material created for pageants, and thus was not entitled to preliminary injunction, where there was no evidence that defendant was making any improper use of the materials.)[4]

### Unfair Competition (Third Cause of Action)

Plaintiff's common law unfair competition claim is premised upon the allegation that "[t]he acts of unfair competition include Defendants' misappropriation and disclosure of TileBar's confidential and proprietary information, and Glazzio's use, or threatened use of such information in competition with and to the detriment of TileBar" (Compl. ¶ 179).   "A claim for unfair competition based on the same allegations as a claim for misappropriation of trade secrets is treated as a single cause of action." Exec. Trim Constr., Inc. v. Gross, 525 F. Supp. 3d 357, 376 (N.D.N.Y. 2021) (quoting Uni-Systems, LLC v. United States Tennis Assoc., Inc., 350 F. Supp. 3d 143, 179

---

[4] Plaintiff's supposed "smoking gun"—the fact that the TileBar materials returned by Defendant Armstrong were not maintained on her TileBar-issued computer—likewise does not establish that any trade secrets were misappropriated. The use of Defendant Armstrong's personal computer was not only necessary for the completion of her job responsibilities, but the use of this computer was also disclosed to, and condoned by, TileBar through its IT department specifically configuring the machine to access TileBar's files and remote desktop server. (Armstrong Decl. ¶¶ 16-18); see Nomura Sec. Int'l, Inc. v. E*Trade Sec., Inc., 280 F. Supp. 2d 184, 193 (S.D.N.Y. 2003) ("When one party performs under the contract and the other party accepts his performance without objection, it is assumed that this was the performance contemplated by the agreement."). Furthermore, while Plaintiff has alleged that it found over two thousand documents that were not contained on Defendant Armstrong's TileBar-issued laptop, it has not shown that any of them constitute confidential information or trade secrets.

(E.D.N.Y. 2018)).   The allegations against Defendant Armstrong under this count are entirely coextensive with the allegations under Plaintiff's counts for misappropriation of trade secrets. Therefore, Plaintiff has not established any likelihood of success for the same reasons discussed above.  Turret Labs USA, Inc. v. CargoSprint, LLC, No. 19-cv-6793(EK) (RML), 2021 WL 535217, *6 (E.D.N.Y. Feb. 12, 2021) (dismissing the plaintiff's unfair competition claim as duplicative of plaintiff's DTSA and common law trade secret claims).

## Breach of Contract (Fourth Cause of Action)

To prevail on a breach of contract claim, Plaintiff must show: "(1) an agreement, (2) adequate performance on their part, (3) breach by [defendant], and (4) damages."  Donohue v. Hochul, 32 F.4th 200, 206–07 (2d Cir. 2022) (citation and alteration omitted).

Defendant Armstrong does not acknowledge the existence of a valid contract, that Plaintiff fulfilled its obligations under the contract, or that it suffered any damages.  However, Plaintiff's claims fail for a much more fundamental reason: Plaintiff does not show any facts indicating that any agreement was breached.  The only breach that is alleged against Defendant Armstrong is that she "violated sections 1(c)(i)(B) and 1(c)(i)(C) of Addendum A by using TileBar confidential information to draft a business plan for Glazzio."  (Compl. ¶ 201).  As discussed above, and in Defendant Armstrong's declaration, the slide deck prepared for Ms. vonRumpf's meeting with Glazzio Tile did not contain any confidential information belonging to Tilebar. (Armstrong Decl. ¶¶ 45-48).  Therefore, Plaintiff's breach of contract claim premised upon the same allegation, must likewise fail.

## Breach of Duty of Loyalty (Seventh Cause of Action)

"To succeed on a claim for breach of fiduciary duty [of loyalty] under New York law, a plaintiff must demonstrate the existence of a fiduciary relationship between the parties and a breach

of that duty by the defendant." <u>Primiani v. Vintage 185 Inc.</u>, No. 2:18-cv-2237(ADS)(AYS), 2019 WL 486087, at *4 (E.D.N.Y. Feb. 6, 2019) (citation omitted).

Defendant Armstrong's supposed breach is premised upon two actions alleged by Plaintiff: (1) misappropriation of TitleBar's confidential and trade secret information; and (2) creating a slide deck in preparation of Ms. vonRumpf's meeting with Glazzio Tiles. (Compl. ¶ 215).[5]

For the reasons discussed above, Plaintiff's allegations of a breach of duty because of misappropriation of confidential information must fail. <u>See, e.g.</u>, <u>Delville v. Firmenich Inc.</u>, 920 F. Supp. 2d 446, 469–70 (S.D.N.Y. 2013) ("[Claimant], however, has presented no evidence that [employer's] confidential or proprietary information was used by Delville to benefit his subsequent employers."). As to the creation of the slide deck, "[t]aking preparatory steps, while still in the employer's employ, to enter into a competing business is not a breach of an employee's duty of loyalty as long as the employee does not use the employer's time or resources to do so." <u>Jeremias v. Toms Cap. LLC</u>, 204 A.D.3d 498, 499, 167 N.Y.S.3d 459, 462 (1st Dep't, 2022). As discussed above and in Defendant Armstrong's declaration, no TileBar property or assets were used in the preparation of the presentation. (Armstrong Decl. ¶¶ 45-48). In fact, the only expense Defendant Armstrong submitted for reimbursement from her entire March 2022 trip to New York (where she first met with representatives of Glazzio Tiles) was to travel to and from a meeting

---

[5] Plaintiff also generally alleges that Defendant Armstrong solicited TileBar's employees and suppliers. However, Plaintiff does not state any substantive facts that support this allegation at all. (Compl. ¶¶ 216-217); <u>see, e.g.</u>, <u>Nat'l Coal. on Black Civic Participation v. Wohl</u>, 512 F. Supp. 3d 500, 508 (S.D.N.Y. 2021) ("Unlike at the preliminary injunction stage, for purposes of a motion to dismiss, a Court must accept all well-pleaded factual allegations in the Amended Complaint as true and draw all reasonable inferences in Plaintiffs' favor. Thus, a plaintiff at the preliminary injunction stage has a 'heavier burden' than a plaintiff 'bears in pleading the plausible claim necessary to avoid dismissal.'")(citations omitted).

requested by TileBar's CEO. (Id. at ¶ 34).

Tortious Interference with Prospective Economic Advantage

In New York, to allege a tortious interference with a prospective business relationship, a plaintiff must allege that: "(1) the plaintiff had business relations with a third party; (2) the defendant interfered with those business relations; (3) the defendant acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) the defendant's acts injured the relationship." Primiani, 2019 WL 486087, at *5 (quoting Catskill Dev., LLC v. Park Place Entm't Corp., 547 F.3d 115, 132 (2d Cir. 2008)).

Plaintiff claims that Defendant Armstrong tortiously interfered by, again, "misappropriating TileBar's confidential, proprietary, and trade secret information to create a new commercial division for Glazzio to solicit TileBar's customers, suppliers, and employees." (Compl. ¶ 226).   As discussed above, Plaintiff has not shown that Defendant Armstrong has misappropriated any confidential or trade secret information, nor has Plaintiff shown that Defendant engaged in any other competitive behavior with bad faith or malice. 106 N. Broadway, LLC v. Houlihan Lawrence, 189 A.D.3d 733, 740, 137 N.Y.S.3d 148 (2d Dep't, 2020) ("While a cause of action for interference with prospective contract or business relationship is closely akin to one for tortious interference with contract, the former requires proof of more culpable conduct on the part of defendant").

Accordingly, Plaintiff has failed to make the requisite showing of a likelihood of success on the merits as to any of these claims, and for this reason alone, Plaintiff's application should be denied.

**POINT II**

## PLAINTIFF ALSO FAILS ON THE REMAINING FACTORS ON PRELIMINARY RELIEF OR EXPEDITED DISCOVERY

A showing that irreparable harm is probable in the absence of a preliminary injunction is "the single most important prerequisite for the issuance of a preliminary injunction." Saget v. Trump, 375 F. Supp. 3d 280, 339 (E.D.N.Y. 2019). As Defendant Glazzio Tiles discusses further in its opposition, Plaintiff has failed to show that irreparable harm is "neither remote nor speculative, but actual and imminent." Ferreyra v. Decker, 456 F. Supp. 3d 538, 546 (S.D.N.Y. 2020). As to the actions of Defendant Armstrong, Plaintiff has failed to show that even a single category of the temporary relief requested is necessary to prevent irreparable harm, nor is there any indication from Plaintiff's papers how the requested relief is related to any harm at all. That failure is grounds, in and of itself, for this Court to deny the requested relief.[6]

Plaintiff seeks to enjoin Defendant Armstrong's actions in five ways: The first three seek an order from the court prohibiting Defendant Armstrong from using or providing confidential information or to otherwise violate the non-disclosure agreement. An order placing such restraints on Defendant Armstrong is facially insufficient:

> The Defendants also argue that, even if the preliminary injunction was proper, the terms of the injunction failed to satisfy the requirements of Rule 65(d) of the Federal Rules of Civil Procedure. We agree. The order enjoins the Defendants "from using any of [plaintiff's] confidential and/or proprietary information and/or trade secrets for any purpose." It also enjoins the Defendants "from disclosing any of [plaintiff's] confidential and/or proprietary information and/or trade secrets to any person or entity, other than [plaintiff] or [plaintiff's] employees or agents." Under Rule 65(d), however, an injunction that prohibits the use or disclosure of trade secrets or confidential information must also specifically describe the nature of the secrets or confidential information to be protected.

---

[6] Plaintiff's delay in attempting to prevent Defendant Armstrong's communications or employment with Glazzio Tiles is further evidence of a lack of irreparable harm. Not only did Defendant Armstrong give TileBar notice that she was meeting with Glazzio, she also informed it of the substance of those meetings. (Armstrong Decl. ¶¶ 39-43). TileBar not only failed to take any action to prevent the disclosure of its purported confidential information, but a supervisor explicitly told Defendant Armstrong that TileBar was going "not going to do anything" to stop the on-going discussions. (Id. ¶ 44); see also Williams v. Rosenblatt Sec. Inc., 136 F. Supp. 3d 593, 618 (S.D.N.Y. 2015) ("[D]elays in seeking relief undercut an argument that the plaintiff will suffer irreparable harm").

ExpertConnect, LLC v. Parmar, 773 F. App'x 651, 653 (2d Cir. 2019) (citations omitted). Neither could the Court issue an enforceable order upon Plaintiff's papers because, as discussed above, Plaintiff has entirely failed to identify which trade secrets or confidential information Defendant Armstrong risks misappropriating.

The final two forms of requested preliminary relief—that Defendant Armstrong be terminated from Glazzio Tiles and that she be enjoined from soliciting "any TileBar customers, potential customers, or suppliers with whom [she] had contact during [her] employment with TileBar"—are clearly meant to be anticompetitive efforts to harass and punish Defendant Armstrong for her perceived disloyalty. First, as to the solicitation injunction, Plaintiff has failed to show (or even allege) that Defendant Armstrong had any contact with any customers or suppliers of TileBar. Nor has Plaintiff even alleged that Armstrong has solicited or will solicit any customer or supplier. Without any attempt to show that Defendant Armstrong has or will engage in such actions, the Court is without justification to enjoin her from such actions. Second, as to Defendant Armstrong's termination, and as discussed in Defendant Glazzio Tiles' opposition, (Glazzio Op. at 1-3), such remedy is extreme and without any rational basis, while Glazzio Tiles has suggested reasonable alternatives, which TileBar has rejected. Ultimately, Plaintiff asks this Court to fashion an ad hoc non-competition and non-solicitation covenant to enjoin Defendant Armstrong from doing what is legally permissible. See, e.g., Island Sports Physical Therapy v. Kane, 84 A.D.3d 879, 879–81, 923 N.Y.S.2d 158, 159–60 (2011). "The New York Court of Appeals has indeed put it flatly that '[a]lthough in a proper case an implied-in-fact covenant not to compete for the term of employment may be found to exist, *anticompetitive covenants covering the postemployment period will not be implied.*'" Am. Fed. Grp., Ltd. v. Rothenberg, 136 F.3d 897, 909 (2d Cir. 1998) (quoting American Broadcasting Companies v. Wolf, 52 N.Y.2d 394, 406, 438 N.Y.S.2d 482, 488,

420 N.E.2d 363, 369 (1981)) (emphasis in original); <u>Sutherland Glob. Servs., Inc. v. Stuewe</u>, 73 A.D.3d 1473, 1474, 902 N.Y.S.2d 272, 274 (2010) ("We agree with defendant that plaintiff failed to demonstrate the need for an injunction to protect its legitimate interests, which are 'limited to the protection of [its] trade secrets or confidential customer lists, or protection from an employee whose services are unique or extraordinary'").

Likewise, given the extraordinary relief requested, and that Plaintiff's claims are based on faulty assumptions or mere speculation, the balance of equities clearly weighs decidedly in favor of Defendant Armstrong. Thus denial of Plaintiff's application is proper. Defendant Armstrong is an individual who is an employee of a Co-defendant. Defendant Armstrong does not have an equity stake in Glazzio Tiles or any financial interest in its success, other than her continued employment. Defendant Armstrong depends on the compensation from the employment at Glazzio Tiles for her livelihood. On the other hand, Plaintiff's alleged harm is, at best, decreased sales and reduced market share, both of which, in the unlikely event that liability is found on any of its claims, could be compensated entirely through money damages (although Plaintiff has not claimed that either of these have occurred). Requiring Defendant Armstrong to shoulder the risk that TileBar may not succeed in fair competition against Glazzio Tiles is wholly unreasonable. <u>See, e.g.,</u> <u>Maltby v. Harlow Meyer Savage, Inc.,</u> 166 Misc. 2d 481, 486, 633 N.Y.S.2d 926, 930 (Sup. Ct. 1995), aff'd, 223 A.D.2d 516, 637 N.Y.S.2d 110 (1996) (holding that injunction enforcement of restrictive covenant is "<u>reasonable on condition that [the employees] continue to receive their salaries</u> for six months while not employed by a competitor") (emphasis added).

Finally, Plaintiff has articulated no basis for expedited discovery outside the ordinary course of litigation under either of its purported standards and, therefore, this relief should be denied. Plaintiff argues that it needs this discovery to determine: "(1) the scope of Defendants'

misappropriation; and (2) the scope of Defendants' use of the misappropriated information." First, after being offer the chance by Glazzio Tiles to engage in a forensic examination of its files, the fact that Plaintiff declined the opportunity to make such a determination as to the "scope" of any alleged misappropriation indicates that the Court also need not give Plaintiff's request much regard at all. Second, given that Plaintiff's allegations against Defendant Armstrong is shaky, at best, there is little purpose to engage in any pre-answer discovery except for Plaintiff to determine whether a claim exists against Defendant Armstrong at all.  This is the purpose of counsel's investigation prior to filing under Fed. R. Civ. P. 11(b), not an excuse for expedited discovery. Litwin v. OceanFreight, Inc., 865 F. Supp. 2d 385, 402 (S.D.N.Y. 2011) (holding that expedited discovery was not warranted where movant demonstrated neither injury or probability of success on merits); In re Alper Holdings USA, Inc., 398 B.R. 736, 754 (S.D.N.Y. 2008) ("Claimants have failed, in their proofs of claim and the accompanying documents, to allege any facts that, if proved, would allow them to recover. . . . Judge Lifland also did not err when he declined to allow Claimants to pursue discovery prior to ruling on Alper's objections to their proofs of claim. Discovery would serve no purpose, other than as a fishing expedition for evidence in search of a theory that has yet to be asserted.").

## CONCLUSION

For the reasons above, and those contained in the briefs of all Defendants, Plaintiff's request for a temporary restraining order and preliminary injunction must be denied.

Dated:  July 11, 2022

Respectfully submitted,

WEINER LAW GROUP LLP

By:_____
Jay R. McDaniel
629 Parsippany Road, P.O. Box 438
Parsippany, New Jersey 07054-0438
Tel:  (973) 403-1100
jmcdaniel@weiner.law
*Counsel for Defendant, Jessica Armstrong*